NEW YORK STATE OPTOMETRIC ASSOCIATION, INC., et al., Appellants, v ROBERT WHELAN, as Commissioner of Health of the State of New York, et al., Respondents.

Third Department, December 9, 1976

*Kimmelman, Sexter & Sobel (Arthur H. Sobel* of counsel), and *Geis, Forman, Schulze, Cooks & Wach* for appellants.

*Louis J. Lefkowitz, Attorney-General (Kenneth J. Connolly* and *Ruth Kessler Toch* of counsel), for respondents.

LARKIN, J. Plaintiffs are organizations of optometrists practicing in New York State and individual optometrists who are residents and taxpayers of the State. The New York State Optometric Association, Inc., represents exclusively those optometrists engaged in professional private practice, while the Optometric Council of New York State, Inc., is composed of both optometrists engaged in professional private practice and

optometrists employed by commercial optical establishments. Defendants are various officials of New York State charged with enforcing statutes and regulations in issue herein.

On February 10, 1975 counsel to the State Education Department issued an opinion to counsel for the Health Department that "optometrists employed by retail sellers of eyeglasses may perform eye examinations as defined as adequate under the Medicaid program, and described in the State Medical Handbook". On July 28, 1975, the Department of Health, by transmittal letter, amended the State Medical Handbook to permit retail optical establishments to be reimbursed in the sum of $5 for a complete eye examination provided by qualified salaried optometrists employed by such establishment. The State Medical Handbook, more particularly section 90.6 thereof (18 NYCRR 505.6 [b] [5]), provides that an eye examination must include, as a minimum, the following: (1) case history: (2) internal and external eye examination; (3) vision correction; (a) objective, (b) subjective (distance and near); (4) binocular co-ordination testing (distance and near); (5) gross visual fields (by confrontation); (6) tonometry for patients age 35 and over and for others where indicated. Plaintiffs commenced this action for declaratory relief, essentially seeking to prevent the performance of the eye examinations set forth in section 90.6, and consequent Medicaid reimbursement therefor, by optometrists employed by corporations or other commercial retail sellers of eyeglasses and lenses, in contrast to those optometrists engaged in professional private practice. This appeal is from an order denying injunctive relief to plaintiffs in the context of the declaratory judgment action and granting a cross motion to dismiss the complaint.

Plaintiffs claim that the performance of the examination set forth in section 90.6 of the State Medical Handbook by optometrists employed by corporations or other commercial retail sellers of eyeglasses and lenses, particularly the gross fields test and tonometry test, constitutes an unlawful practice of optometry under section 7102 of the Education Law, which provides that "[o]nly a person licensed or exempt under this article shall practice optometry or use the title 'optometrist'". Although it is well established that a corporation is not a person and may not, therefore, practice optometry within this State *(People v Sterling Optical Co.,* 26 Misc 2d 412, affd 14

AD2d 838, affd 11 NY2d 970), this general prohibition has been modified by the Legislature.

Subdivision 2 of section 7106 of the Education Law provides that "[e]yeglasses or lenses for the correction of vision may be sold by any person, firm or corporation at retail, only on prescription of a licensed physician or licensed optometrist and only if a licensed physician, optometrist or ophthalmic dispenser is in charge of and in personal attendance at the place of the sale". The predecessor to this statute, section 7109 of the Education Law (repealed by L 1971, ch 987, § 1), which was virtually identical, was considered by the Court of Appeals in *Sterling (supra)*.

The plaintiffs rely primarily upon the portion of the *Sterling* opinion which provided that the corporate defendant therein was "not prohibited from employing licensed optometrists for the limited purpose of examining the eyes of its customers in connection with the sale of eyeglasses at retail and for this purpose to utilize their skill to determine the need for glasses and the prescription to meet any such need" *(People v Sterling Optical Co., supra,* p 421). The court's holding that the defendant's activities did not constitute the unlawful practice of optometry was "limited * * * to the propriety of defendant's employment of optometrists and opticians as a necessary incident to the sale of eyeglasses at retail" *(id.)*. On the authority of an affidavit of Alden N. Haffner, a licensed optometrist and Dean of the State College of Optometry, S.U.N.Y., who states that the gross visual fields and tonometry tests are not necessary when examining eyes for the purposes of prescribing corrective glasses and lenses, plaintiffs argue that their performance by optometrists employed by corporations and other commercial retail sellers of eyeglasses and lenses goes beyond the activities permitted by the *Sterling* case. We disagree with the plaintiffs' application of the *Sterling* case and conclude that Special Term properly dismissed the complaint.

Although the court in *Sterling* did limit the allowable examinations by the optometrists employed by the defendant therein to those performed "in connection with the sale of eyeglasses" and "as a necessary incident to the sale of eyeglasses", it made no specific reference to the type of examination to be performed. The policy of the court therein, however, can be ascertained by examining the following response to the claim that the defendant's optometrists should have been

limited to determining whether customers should select "ready made" glasses. The court found that "[s]uch a limitation bears no relation to the protection of the health, welfare or safety of the public. The public requires the same protection whether the eyeglasses are ready-made or assembled to order, and the optometrist must exercise his art in both instances to the same extent and for the same purpose, that is, to examine eyes to determine the proper prescription required to correct the vision. The public is not better protected if the sale of eyeglasses is confined to optometrists and denied to corporations which employ optometrists to perform exactly the same function in connection with the retail sale of eyeglasses that an optometrist would perform as a storekeeper" (id., at p 420. See, also, *Matter of Dickson v Flynn,* 273 NY 72).

The primary concern of the court in the *Sterling* case was quite clearly the public welfare. The court concluded that this interest was best served if the two categories of optometrists were "to perform exactly the same functions" in connection with the retail sale of eyeglasses. The Department of Social Services has concluded that the gross visual fields test and tonometry tests are necessary portions of "[a]n eye examination provided by an optometrist to be accepted as the basis for prescription of eyeglasses" (18 NYCRR 505.6 [b] [5]). Plaintiffs' claims to the contrary, there is sufficient evidence in this record from which we may conclude that such determination, which provides the public with more thorough eye examinations than if the tests in question were not included, has a rational basis. Because the public interest is best served if both professional and salaried optometrists are able to perform the same examinations in connection with the sale of eyeglasses, we agree with Special Term that the performance by optometrists employed by corporations and commercial optical establishments of the tests necessary to qualify such examination for Medicaid reimbursement are within the statutory exception contained in subdivision 2 of section 7106 of the Education Law.

The order should be modified, on the law, to the extent of striking therefrom that part of the last decretal paragraph which dismisses the complaint and substituting therefor a provision declaring that the performance by optometrists employed by corporations and commercial establishments of examinations necessary to qualify such examination for Medi-

caid reimbursement is within the exception contained in subdivision 2 of section 7106 of the Education Law, and, as so modified, affirmed, without costs.

GREENBLOTT, J. P., SWEENEY, MAIN and HERLIHY, JJ., concur.

Order modified, on the law, to the extent of striking therefrom that part of the last decretal paragraph which dismisses the complaint and substituting therefor a provision declaring that the performance by optometrists employed by corporations and commercial establishments of examinations necessary to qualify such examination for Medicaid reimbursement is within the exception contained in subdivision 2 of section 7106 of the Education Law, and, as so modified, affirmed, without costs.