Joseph AGRO, Plaintiff,

v.

JOINT PLUMBING INDUSTRY BOARD (LOCAL 2, U.S.A.), Harvey B. Rehner, John J. Murray, Laurence Felder, and Morris Olshina, Individually and in their Capacities as Chairman, Co-Chairman, Treasurer, and Executive Secretary, respectively, Louis Desiderio, Morris Olshina, William Greenblatt, Leonard S. Farbman, Laurence Felder, and William Gross, Individually and in their Capacities as Trustees of the Joint Plumbing Industry Board Pension Fund, and Local Union No. 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry, John J. Murray, Individually and in his Capacity as President, Defendants.

No. 78 Civ. 2454 (RWS).

United States District Court,
S. D. New York.

May 8, 1979.

---

Schoffman & Skovronsky, Brooklyn, N. Y., for plaintiff; Harold Skovronsky, Brooklyn, N. Y., of counsel.

Colleran, O'Hara, Kennedy, Lilly & Dunne, P. C., Garden City, N. Y., for defendants; Robert A. Kennedy, Stephen J. Smirti, Jr., Garden City, N. Y., of counsel.

## OPINION

SWEET, District Judge.

Plaintiff Joseph Agro ("Agro"), a plumber by trade, seeks a declaratory judgment that he is entitled to pension benefits from the defendant Joint Plumbing Industry Board (the "Board"). The Board administers a Pension Fund (the "Fund") established on July 1, 1950, such Fund consisting of revenues from employer contributions made pursuant to agreements with Local Union No. 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry (the "Union"), of which Agro is a member. Agro claims he is entitled to the pension pursuant to the Pension Plan (the "Plan") adopted by the trustees of the Fund. Jurisdiction is claimed under 28 U.S.C. § 1331 *et seq.* and 29 U.S.C. §§ 185, 186 and 1132.

The initial plan, adopted in 1952, predicated pension eligibility on the following conditions: (A) attainment of age 65, (B) membership in good standing of the Union for at least 15 years, (C) such membership to be for at least five consecutive years immediately preceding the date of pension application, (D) employment for a contributing employer in each of the two annual periods immediately preceding the date of the pension application and (E) employment at the plumbing trade for at least 1,250 days during the period of membership in the Union. The Plan has been amended three times since 1952,[1] each amendment affecting the eligibility requirements for pension benefits. In 1963, pursuant to changes in federal pension laws, the Plan was amended, *inter alia,* to delete Union membership as a condition of eligibility and to delete subdivisions "B" and "C" of the eligibility requirements. In 1966, on the advice of the Fund's actuarial consultant, the eligibility rules were amended to require, *inter alia,* that the applicant have worked for a contributing employer in each of 15 consecutive years immediately prior to retirement, during which period he must have a total of at least 1,250 days of work for a contributing employer. In 1971 the rules were amended to provide eligibility for one who has either (i) met the requirements of the Plan as amended in 1966 or (ii) acquired 15 years of unbroken credited service, one-quarter year's credit being earned for each 35 days of contributing employment within a calendar year, and a break of credited service deemed to have occurred if the applicant lacks two-quarters credit

---

1. There was also a 1960 amendment affecting disabled employees, such amendment not being relevant to this action.

within any three consecutive calendar years.

It is undisputed that Agro, a member of the Union since 1939, worked for a contributing employer in each of 13 separate years since 1950 and that during those years he worked at least 1,466 days for contributing employers. Agro asserts that he should be given credit as having worked for contributing employers for two additional years, 1952 and 1956, bringing his total to 15 years. Further, it is undisputed that even with 15 years of credit service Agro does not qualify under the Plan as amended in either 1966 or 1971. Therefore, plaintiff seeks to have the eligibility rules of the Plan, as amended in 1966 and 1971, declared to be arbitrary and capricious as applied to him. Additionally, Agro also seeks qualification under the grandfathering provision referred to at trial by a trustee of the Fund, Mr. Morris Olshina, asserting that as of the time of the 1966 amendment he had already qualified for his pension benefits. In sum, Agro seeks to recover under either of two main theories:

(1) That the 1966 and 1971 amendments are arbitrary and capricious as applied to him and that he need only satisfy the requirements existing after the 1963 amendment; or

(2) That by having already qualified for benefits at the time of the 1966 amendment, except for reaching the age of 65, he is entitled to benefits under the grandfathering policy.

(1) *1966 and 1971 Amendments*

▮ Agro first claims that the 1966 and 1971 amendments were arbitrary and capricious as applied to him. In the pre-trial order and pre-trial brief, and at trial, plaintiff did not contest the validity of the 1966 and 1971 amendments or the 15 consecutive year rule therein. His claim is that such

rule, as applied to him, is arbitrary and capricious. This Court finds otherwise.

The 15 consecutive year requirement was suggested by the Fund's actuary for financial reasons and to prevent undeserving claimants from invading the Fund. *See Mitzner v. Jarcho*, 44 N.Y.2d 39, 403 N.Y. S.2d 490, 374 N.E.2d 388 (1978). In light of such reasons, the decision by the trustees to deny Agro pension benefits was not arbitrary or capricious. Agro did not comply with either the 15 year requirement or the continuous service requirement. His failure to work for a contributing employer from 1966 through 1969 was a voluntary decision on his part,[2] was, for the most part, for a time period subsequent to the 1966 amendment, and was admittedly to make more money abroad, when others may have been earning less in return for assuring their pension by working for contributing employers. Furthermore, for the six years immediately preceding Agro's retirement, most of which time the Fund was experiencing financial difficulties, Agro worked for a contributing employer in only two years and for a total of only 190 days. Even if Agro is credited with 15 years of contributory service, or his failure to obtain such is excused by his injury in 1971, his failure to comply with the continuous service requirement, based upon his voluntary decision to work abroad, precludes a determination that the denial of pension benefits was arbitrary or capricious.

▮ Agro also asserts that he was not notified of the 1966 and 1971 amendments to the Plan, that his failure to comply with the requirements was therefore excusable and it was arbitrary and capricious to deny him pension benefits. It is unclear who Agro claims was under a duty to inform him of the new amendments, the Union, the Board, or both. Since subsequent to the 1963 amendment Union membership had nothing to do with the eligibility require-

---

**2.** Agro's claim that he was forced to leave due to the nature of the constructing trades and the lack of employment opportunities is unpersuasive. Such a claim would be relevant had he attacked the 1966 and 1971 amendments themselves, since such a claim, if true, would have affected all plumbers in the industry. This claim is of little relevance to his assertion that the application of the '66 and '71 amendments were arbitrary and capricious as applied to him.

ments, the Union was not required to give him notice.[3] The Board, which administers the Fund, has no direct or fiduciary relationship to the plaintiff. Subsequent to the 1963 amendment, which eliminated the requirement of Union membership, there was no specific or identifiable group of people who could qualify under the Plan. There has been no showing by Agro that the Board had any fiduciary relationship, or other duty, to all those who may have at one time or another worked for an employer who contributed money in their name. Absent any such showing it would be unreasonable to impose upon the Board a duty to give specific notice to such a group. In *Posner v. Rockefeller*, 31 A.D.2d 352, 297 N.Y.S.2d 867 (3d Dept. 1969), cited by plaintiff, the court required notice by the pension plan, but only "since the pension plan itself contains no express provision relating to delinquent contributions . . . .". Here, the Plan contained the express provisions Agro seeks to avoid. Additionally, there was uncontradicted testimony that general notice was given at Union meetings.

Furthermore, there has been no showing by Agro that the Union or the Board attempted to conceal the amendments from him or that he made any periodic effort to determine the then current eligibility requirements under the Plan. Finally, Agro introduced no evidence or testimony that had he known of the amendments he would have attempted to comply with them. Therefore, based upon all of the foregoing, the denial of pension benefits was not arbitrary or capricious.

(2) *Grandfather Provision*

The grandfathering provision referred to by the witness Olshina provides that a pension will be given to one who has qualified as of the time of an amendment to the Plan. Under this provision Agro seeks pension benefits on the ground that as of the 1966 amendment he qualified under the

Plan. To succeed, Agro must establish that by the time of the 1966 amendment he qualified under the Plan as amended in 1963.

There is controversy over the eligibility requirements established by the 1963 amendment and therefore those in effect at the time of the 1966 amendment. This controversy arises from the recent Appellate Division decision in *Huffe v. Jarcho*, 64 A.D.2d 960, 408 N.Y.S.2d 793 (1st Dept. 1978) interpreting the 1963 amendment. This decision states that the 1963 amendment had the effect of requiring 15 years of non-consecutive service for a contributory employer. Agro asserts that he qualifies even under the interpretation set forth in *Huffe*. To succeed in this claim Agro must establish that he is entitled to credit for 1952 and 1956 as having worked for a contributory employer, bringing his total to 15 years. Alternatively, Agro contends that the decision in *Huffe* was incorrect, and that under the correct analysis of the 1963 amendment there is no 15 year requirement and that, irrespective of 1952 and 1956, he qualified for benefits as of the 1966 amendment. For the reasons set forth below, this court holds (i) that Agro does not qualify under the 1963 amendment as interpreted by the Appellate Division in *Huffe,* but that (ii) the *Huffe* decision incorrectly interpreted the decision of the Court of Appeals in *Mitzner v. Jarcho*, 44 N.Y.2d 39, 403 N.Y. S.2d 490, 374 N.E.2d 388 (1978) and that therefore the 1963 amendment added no requirement of 15 years of non-consecutive service for a contributory employer.

1. *Eligibility Under Huffe*

To qualify under the 1963 amendment as interpreted in *Huffe* Agro must establish that he had 15 years of service for an employer who contributed, directly or indirectly, to the Fund. To satisfy this requirement Agro need obtain credit for the years 1952 and 1956.

---

**3.** Even if the Union was required to give Notice, the evidence at trial, which was uncontradicted by the plaintiff, indicated that the amendments were brought up and discussed at Union meetings.

At trial plaintiff testified (i) that in 1952 he worked for Aaron Eckhaus in Brooklyn and that in 1956 he was employed by Precise Plumbing in Massapequa, Long Island, (ii) that both jobs were obtained with the aid of a union delegate, (iii) that he believed both employers were contributing employers and (iv) that the unions in Brooklyn and Massapequa had a reciprocity agreement with Local Union No. 2. However, plaintiff introduced no evidence establishing that the unions in Massapequa and Brooklyn received contributions from Eckhaus or Precise or that any contributions were forwarded from the Brooklyn and Massapequa local unions to Local No. 2. Defendant's Exhibit B, which is Agro's contribution card kept by Local Union No. 2, does not reflect any contributions for him for the years 1952 and 1956. Furthermore, Morris Olshina testified that to his knowledge neither Eckhaus nor Precise were contributing employers to Local No. 2. Therefore, plaintiff has not satisfied this court that he worked for an employer who contributed to the Fund, either directly or through a reciprocity agreement, for the years 1952 and 1956.

Further, the Fund made no representations, or otherwise accepted responsibility for informing plumbers, as to whether a plumber was working for a contributory employer. However, as a service, it did provide a list of contributing employers to assist plumbers in their determination of who was a contributing employer. There was no allegation that either Eckhaus or Precise were on such list.

Absent 15 years of contributory employment, Agro has not complied with the requirements as set forth in the 1963 amendment, as interpreted in *Huffe*. However, alternatively, Agro contests the analysis and holding of the Appellate Division in *Huffe*.

## 2. *Applicability of Huffe*

The decision with which the court is now faced is whether the decision in *Huffe* correctly interpreted the holding of the Court of Appeals in *Mitzner, supra*. The defendant does not dispute the existence of a grandfathering policy and that if Agro's interpretation of the 1963 amendment is accepted he qualified, other than having attained the age of 65, for pension benefits at the time of the 1966 amendment. Benefits will not be denied plaintiff on the basis he was not 65 years of age at the time of the 1966 amendment, assuming all other requirements are satisfied. *See Lee v. Nesbitt,* 453 F.2d 1309 (9th Cir. 1971). This plaintiff is not a claimant undeserving of the benefits of the Plan, but one who has been loyal to his trade; further, there has been no showing that the Plan will be adversely affected by allowing this claim. *See generally Kraft v. Felder,* 452 F.Supp. 933 (S.D.N.Y.1978); *Mosley v. National Maritime Union Pension & Welfare Plan,* 451 F.Supp. 226 (E.D.N.Y.1978). The question therefore is relegated to a determination of whether or not the 1963 amendment required 15 years of non-consecutive service for a contributing employer.

The Plan, as adopted in 1952, contained five requirements for eligibility. *See* discussion *supra*. In 1963 the Plan was amended to delete union membership as a condition for eligibility. The amendment substituted the requirement of "participant" status for that of union membership, a participant being defined as one who, among other things, works for a contributing employer. However, the amendment also deleted subdivision B and C of the 1952 requirements.[4] Subdivision B is the only subdivision that had any 15 year requirement,[5] to wit, a requirement of 15 years of union membership. Defendant will have this court interpret the amendment as sub-

---

4. The amendment is as follows:

    "RESOLVED, that Subdivisions 'B' and 'C' of the Eligibility Requirements be deleted, and that in Subdivision 'E' of such Eligibility Requirements the words 'during his total membership in good standing in the Union' be deleted and in the place and stead thereof

there shall be inserted 'during the time employed by contributing employers or by a contributing employer.' "

5. Subdivision B stated: "He has been a member in good standing of the Union for at least fifteen years."

stituting 15 years of employment by a contributing employer for 15 years of union membership. However, a strict reading of the amendment prohibits such an interpretation—subdivision B was deleted in its entirety. At oral argument on this point defendants offered no plausible explanation as to how such interpretation could be made from the language of the amendment. Indeed, if the defendants' interpretation is accepted that subdivisions B and C were not deleted but instead the requirement of employment by a contributing employer was substituted for membership in the union, there would exist an irreconcilable difference between subdivisions C and D. Subdivision C would require employment by a contributing employer for five consecutive years prior to application, yet subdivision D would require only two years. A reading of the amendment leads to no ambiguity; subdivisions B and C were deleted since these were solely union membership provisions, the elimination of which was the sole purpose of the 1963 amendment. It was not until 1966 that any 15 year requirement was reinstituted, to help insure the integrity of the Plan which was then in jeopardy. The 1963 amendment sought to preserve the integrity of the Plan by requiring 1,250 days of employment by a contributing employer; this being insufficient, in 1966 the 15 year requirement was added.

Defendants rely almost exclusively on the recent Appellate Division holding in *Huffe v. Jarcho* as support for its position. There the Appellate Division, in following what it believed to be the mandate of the Court of Appeals in *Mitzner v. Jarcho, supra,* held that the 1963 amendment added a requirement of 15 non-consecutive years of employment with contributing employers. It is this court's opinion that the Appellate Division not only misinterpreted the contractual provisions here in issue (*see* discussion *supra*), but also the language of the *Mitzner* court. The language relied upon is as follows:

> ". . . in 1963 the plan was further amended to delete union membership as a condition of eligibility. Instead, employment with a contributing employer, re-

gardless of union membership, qualified one for fund benefits. In 1966 the pension plan was again amended . . . . . benefit claimants were *now* required to have accumulated 15 consecutive years of employment . . . ." (emphasis added)

*Mitzner, supra,* 44 N.Y.2d at 43, 403 N.Y. S.2d at 492, 374 N.E.2d at 389. The Court of Appeals, when referring to the 1963 amendment, made no mention of any 15 year rule. When referring to the 1966 amendment the court stated that then, for the first time, a 15 consecutive year employment requirement was added. The Appellate Division would limit the "now" reference as to only the consecutive requirement. However, there is no support for such an interpretation. Therefore, the language of the Court of Appeals as to what the effect of the '66 amendment was must be interpreted as stating that both the 15 year and consecutive requirements were added in 1966. Further support for this conclusion is that the Court of Appeals also stated that "prior to the 1966 amendment one could qualify for a full pension, having worked for contributing employers for only a *very brief period.*" (emphasis added). *Mitzner, supra* at 47, 403 N.Y.S.2d at 494, 374 N.E.2d at 392. Under defendants' interpretation though, no longer period was added by the '66 amendment, only the consecutive requirement. Also, in the context of this Plan the Court of Appeals could not have been referring to a 15 year requirement as a "very brief period".

▮ The mandate of the higher New York court, the Court of Appeals in *Mitzner,* as to the interpretation of the contractual provisions in issue is clear: the 1963 amendment added no requirement of 15 years of employment for a contributing employer. This court will follow the mandate of the higher New York court. Absent the 15 year requirement, Agro qualified, except as to attaining age 65, for benefits prior to the '66 amendment. For the reasons set forth above, he is therefore entitled to receive pension benefits. These benefits will be computed from August 1971, since this

court finds that the facts establish that trustees of the fund improperly discouraged him from formally applying for his benefits on that date. Compensatory and punitive damages are denied.

This opinion shall constitute this court's findings of fact and conclusions of law. The parties are directed to submit judgment on notice within ten days from the date of this opinion.

IT IS SO ORDERED.